Morning, Your Honors. My name is Gary Lusko. I represent the interveners in this case, the National Trappers, the Fur Takers, and the Minnesota Trapping Associations. I think it's fair to say in the scheme of cases that come before you, this is a unique matter. I can assure you, as to my clients, it's as important as any case, and we appreciate your time and honored to be in front of you. I'll do my very best to answer any questions you have. The briefs have been submitted in front of you. And then we did receive a letter from the clerk on February 12th requesting the parties to address the U.S. Supreme Court in Summers. And with that, I will start there as to how we see that fits in. So the Summers opinion, 2009, held the standard, what I would call, I think fairly the standard that's required to establish standing. And that an organization must by affidavit provide individual members harmed by the challenge regulation. In this particular case, our case, there were no affidavits or declarations that have been filed, and I think that's undisputed. What about the interrogatory response, the interrogatory sworn to by counsel under oath? Correct. Is that enough? Well, it does not appear so. Answers to interrogatories but signed by the counsel, not the parties, and Rule 33 of Federal Rules of Civil Procedure under B-5, the signature required, the person who makes the answers must sign them and the attorney who objects must sign any objections. In this case, the answers to interrogatories were not signed by the parties. And the Summers case cites to an earlier opinion from the Defenders of Wildlife, 504 U.S. 555, held that the organization lacked standing because it failed to submit affidavits showing through specific facts that one or more of its members would be directly affected. And it cites to Morton. And it talks about late filings, which the affidavits were, under Rule 15d, Rules of Civil Procedure, not allowing supplementation of the record after appeal has been filed. And so that is what I can argue to you or state to you after our thorough review of this, that the Summers opinion. There have been some other circuits that have issued some opinions, but the core issue as held by the Supreme Court is that the affidavits have to be signed by the individuals. Or I think what the Supreme Court is saying, it's complete chaos. If you can bring this in later, you can bring it at any time, it can be signed by an attorney. The organization doesn't need to or must show that its members or that at least a member or all of its members are affected. They're harmed by it to have Article III standing. And it was not addressed before. We were not involved, my clients were not involved early on in the case. And the filing that was just made late by the Center for Biological Adversity didn't provide signed affidavits or even signed interrogatories. It just provided a copy of the interrogatories. I've been involved in many cases where my clients would very much like to ignore the U.S. Supreme Court as to specific matters. Unfortunately, for all of us, that is the standard between us and chaos. We have to have a standard, and the Supreme Court held that. Unless there's other questions, that, I think, concludes my presentation as to the Summers matter. In Summers, it does say, use the area affected by the challenged activity, you know, on page 1152. Is that enough? Yeah, I think Summers gets into... Just address that point specifically, because that is mildly close to what was in the original order and complaint way back there. Yeah, Summers gets into a situation, if I understand. I'm not trying to talk around your question. No, go ahead. There were affidavits or declarations that were submitted by the plaintiffs in Summers, and that part of the complaint was resolved so it didn't carry over or flow to the other issues that were before the complaint or before the court in the complaint. And then the plaintiff then moved forward contesting general U.S. Forest Service restrictions, but they didn't have declarations showing that any particular member would go to that particular forest. So I don't think we have that fact scenario here. I mean, it isn't that their interrogatory said something and then that changed in the case. With that, I will grant you. I mean, the reality is the reality. As to the case overall in general, our position is I think most well stated in U.S. Supreme Court Local Number 93, a union case, 1986. And it talks about the proposition that a federal court is more than a recorder of contracts from whom parties can purchase injunctions. And we feel that it might not be that the court took the fee, so to speak, but the Minnesota DNR took the proposition from the Center for Biological Diversity to settle the case. And in this, that's exactly what ended up happening, is that the court then recorded a contract between the parties without having the substantive requirements that are set out by the Supreme Court. And so, one, courts are not just rubber stamps. And in determining that, accordingly, a consent degree must spring from and serve to resolve a dispute within the court subject matter jurisdiction. Furthermore, consistent with the requirement, the consent degree must come within general scope of the case made by the pleadings. And in this case, I think it's very important to go back to the original complaint, and the Center for Biological Diversity alleged nine instances where they alleged that links had been taken in traps and snares. I'm going to just refer to snares and traps. The consent decree breaks down certain restrictions on snares, certain restrictions on trapping. And trapping is an endeavor where there's a tipping point where you can have it restricted, have it restricted, have it restricted, and there's still meaningful ways to accomplish that endeavor. But if you go beyond that tipping point, and that is not something that's easy to get across in a courtroom because it is a learned profession that is still very important to people all over the country, specifically in Minnesota, and that this consent agreement, without ever asking the trappers for any involvement, did just that. It broke the tipping point. So on paper, there's snaring and trapping in northeast Minnesota. In practical terms, there's not snaring and trapping for many types of trapping. And that we can't find another case where the settlement didn't even include the allegations in the complaint to be fixed. I mean, these nine links never got to be fixed. Well, wait. It says the terms of the 208 order are incorporated in the decree. Isn't that enough? You know what I'm referring to in the consent decree, paragraph 8? Tell me if I don't follow your argument. Well, the eight links that the complaint alleges were taken in violation of the earlier regulations. The consent decree doesn't fix any of that. So if that was the case, it doesn't matter to the links. It mattered to the center, they got a settlement.  But to the links, those links today, under exactly the same circumstances, would be taken in exactly the same way. But Dr. Erb suggested, as an expert witness, that it would still, even though the past links may not have been saved with these restrictions, that the restrictions still would help in certain situations in terms of snaring links in the future. Right. We respectfully disagree with Dr. Erb on that, but that is what he testified. That's a fair recitation of what he testified to. But the regulation, the contract that was entered on behalf of the parties by the court doesn't do that. The links that were taken earlier would still be taken today under the new contract, under the new regulations. And you don't think it's good enough if it would prevent some in the future, even if there's some that would still be ensnared? Well, that's a slippery slope. I mean, I get the point of it. If it's one links in a different part of the state under different regulations, I mean, trappers aren't out trying to catch links. It's the worst day a trapper can have. I mean, we have education programs that clients do to help assist with this, work with the DNR. But this has real impact to the trappers in a way, and also in Local No. 93. Interveners cannot stymie a consent degree just by objecting. You can't just say, nope, we don't agree to it, we're not going to sign off to it. But in Local No. 93, and this seems to have gotten lost by other court decisions on this, but in that case, the union was not bound by the agreement or consent decree. And in our case, interveners are bound. They can't do this. So they were pushed around. This was a settlement around them. And they are required to follow these laws. The state may argue, well, we have the right to do this or not. I don't think they did under their expedited emergency laws. Counsel, you're within your rebuttal time, but I would like to ask you if you could succinctly state what the abuse of discretion of the district court is that you're asking us to correct. The abuse of the district court is that the court signed off on a consent decree that wasn't even alleged to in the complaint. And so just the parties agreed to something, to agree to something, and just rubber stamp what their agreement was. And I say that with the utmost respect for the district court judge, but that it didn't address the issues in the complaint, which is what you need to have. You have to have in your complaint what the complaint is. What was your party's avenue into being able to object or being able to interpose your preferred outcome in this litigation? If I understand, our avenue was to we did seek an evidentiary hearing. The judge granted that, and we provided testimony, and the judge decided that Dr. Erb was more convincing than our witness. If I answered the question that I thought you had. Okay. I have reserved a small amount of time, and I'll answer any other questions you have for me at that time. Thank you. Thank you, Mr. Lustico. Ms. Atkins. Good morning, and may it please the Court. Counsel for the DNR and I have agreed to split our time, and I'll plan to primarily focus on the jurisdictional issue. The district court correctly held that the center's complaint set forth plausible standing allegations for the pleading stage. Judge Benton, you mentioned the standard in Summers there, that we need to allege that we have members that use the area at issue. That's the standard in Summers. That's the standard in the Eighth Circuit. Because of the settlement, the case never reached the summary judgment stage. We weren't called upon to submit affidavits. The summary judgment stage is where Summers was, where Defenders of Wildlife v. Lujan was. And in discovery, we did exactly what this Court's question asked about. We identified specific members affected by the DNR's trapping program. We were prepared to satisfy any of Summers' burden at the summary judgment stage. But the one thing you didn't do, and some circuits require this. We haven't taken a position, but some circuits require you to actually allege it in the complaint up front. And my understanding is it's not in the complaint, those members, their interest. So Summers was decided at the summary judgment stage. You're right that there are some circuits that have extended that reasoning down to the complaint. There's a circuit split. I encourage you to look at the Ninth Circuit cases, and if you really want to dig in on this, I'd be happy to provide post-hearing briefing on it. But what's important here is that in Summers, the affidavits there, they didn't even allege that they had members that used the area. Our complaint itself is very specific, that we have members that live in the area, work in the area, study in the area, are regularly in the area where lynx live and where trapping occurs. I just wonder whether those other circuits might have a point here. And I'll tell you why. Because we have a situation, and you've identified it, in which we have nothing in the record. When we went to look at it, we were like, okay, there's some general allegations, but there's no identification of any members. And I wonder whether requiring the pleading up front in the complaint avoids the situation that we have here, which is an appellate court without any indication whatsoever who these members are or what their interest actually is. Now, you're right about the general allegations, but no identification of the members. Right. I posit that that's inconsistent with Defenders of Wildlife v. Lujan, which does very clearly state that the burden for the plaintiff, the evidence they need to bring forth, changes throughout the litigation. You need less at the beginning. You need more at summary judgment. And also, in conclusive, contradicting Lujan's statement that general allegations in the pleading can be assumed at the pleading stage to encompass those specific allegations that are needed. But don't we need to now, I mean, do you think, supplement the record? Because there is the requirement from Summers that there's specific identification. I know you provided the interrogatories, but doesn't to have that specific identification, doesn't that require us to grant the motion to supplement? I don't think it does. I think you can depend on allegations in our complaint. But if you want to further assure yourself that you have jurisdiction, please do supplement the record with our interrogatory response. I was going to say, I was just going to follow up and say, does it make a difference that they're not signed by the people who have the interest here? So it was signed by me under penalty of perjury. The interrogatory asked who we intend to rely upon, and I, under oath, say that we are relying upon those three people. That's the best we could do in terms of things that had already been prepared. But we are fully prepared to submit declarations from those three named members if that would be helpful to the court. You didn't make any requests for admissions or anything like that, right? I didn't find anything like that in the record. No, just the motion to supplement with the interrogatory response. At this level, but no, I'm talking about the district court. At the district court, the interrogatory is not filed, right? Standard practice? No, it wasn't. It wasn't filed, and you did not request admissions at the district court level? No, we didn't. Standing came up at the motion to dismiss stage. The district court, you know, ruled in our favor, and it never came up again. But in the order where the district court approved the consent decree, he reiterated his finding at motion to dismiss, but didn't engage. There was never any question about the jurisdictional facts that were pled in our complaint. I want to respond to just one point made by the trappers in terms of the substance. It's their primary point they rely upon in their reply brief, that the decree wouldn't have prevented the undisputed takes that those nine that are undisputed, and I want to first point out that there were 15 alleged in the complaint. We didn't even get through discovery. And they're wrong in the facts that the consent decree wouldn't have prevented any of those. There's one on February 15, 2014, and another on December 1, 2017. Both of those had a dead lynx in the lynx zone, caught in a trap, a snare specifically. But even assuming that they're right on the facts, this is just their own made-up test. There's nothing in the case law that requires that a consent decree have prevented all of the harms alleged in the complaint. The real test is that it needs to fall within the general scope of the complaint. Would it have prevented any? The argument is a little bit more forceful from opposing counsel, which is it wouldn't have prevented any of them. And here we have a nice sampling, and that's a problem. In your opinion, would it have prevented any of the takes? Yes. It would have for sure prevented both those two that I refer to. Okay. Uh-huh. The other thing — Is that factually disputed, or is that just your thoughts versus counsel's thoughts? Well, they're — well, they're — no, I don't think they're disputed. I think he's just — has made an error. So the 12 — the December 1, 2017 take, that is the center appendix, page 1. That's a lynx caught in a snare, died in the lynx zone. The reason why my friend on the other side doesn't count that is because it would have — it took a bobcat. And his position is that bobcat takes are permitted under this national CITES permit. Now, that is a legally contested issue, strongly contested by the center. And the whole point of a consent decree is that you don't go litigating these contested legal matters. So that was part of the compromise that we staked out when we entered the consent decree. One other quick point is that the consent decree furthers the purpose of the ESA, conserving listed species. Now, Section 9 is targeted towards preventing deaths and harm to individual animals. That's part of the statutory scheme of the ESA. By protecting individuals, you protect the species. Those past takes are mostly relevant because they prove the DNR is liable. They don't need to strictly confine our remedy because the remedy would have been litigated as well. And this was a compromise. And the district court carefully balanced what we gave up and what they gave up. And for that reason, it's reasonable. And I am stealing my friend from the DNR's time. I apologize. Roberts. Mr. Ferrell. May it please the Court. My name is Pete Ferrell. I'm an assistant attorney general, and I represent the commissioner of the Minnesota Department of Natural Resources. I have very limited time this morning, so I just want to make a couple of brief points, the main one being that this Court should affirm Judge Toster's decision to approve the consent decree. And I want to focus on two reasons. The first is that the trappers dramatically overstate what the law requires of a consent decree. And second, to the extent the trappers claim that the technical rule changes in the proposed decree would not have prevented any of the post-2008 takes, they are wrong. More importantly, the record as a whole overwhelmingly supports the decree's proposed rule changes, which will reduce mortality risk to links and will impose a minimal or manageable burden on trappers. So let me start with the first point, which is that the trappers dramatically overstate what the law requires of a consent decree. The central thrust of the trappers' brief and what you heard this morning is that the decree is unreasonable because it doesn't map on, in their view, to the past harms that were alleged in the complaint. But that's not how courts review consent decrees. As this Court has long recognized in decisions that stretch back decades, like Metropolitan St. Louis Steward District from 1992, consent decrees are not reviewed like final judgments on the merits. Instead, consent decrees are reviewed for reasonableness because they are compromises. And this consent decree was a reasonable compromise. That was the core of Judge Toster's analysis below. Each side walked out of this case not feeling great, like in any good compromise. The Center got some of what it wanted in terms of additional protections for links. The DNR got some measure of certainty regarding its Endangered Species Act compliance in the links management zone. And each party was willing to forego certain defenses or relief that they wanted in order to get this case resolved. That is the essence of a good compromise. And the law's strong background presumption, as this Court has recognized in recent cases like EEOC from 2012, is that the law prefers settlements. And that is the proper lens through which to review this consent decree. Roberts. Counsel, what about the emergency rulemaking? You heard opposing counsel kind of allude to it this morning, that I think the trapper's view is that the emergency rulemaking wasn't allowed, and therefore it shouldn't have been made part of the consent decree because it violates the law or violates Minnesota statute. Three responses to that, Judge Strauss. So, first of all, that argument doesn't affect the reasonableness of the decree. What the decree itself requires is for the DNR to adopt these rules through any regulatory means necessary. Now, the DNR was up front about the fact that it was going to use expedited emergency rulemaking, but from the perspective of the decree, it was, DNR, do whatever you have to do under State law to get these rules implemented. Now, in terms of whether the DNR had the authority to use expedited emergency rulemaking, the trappers actually never argue in their brief that it was legally improper. Instead, what they say is that it's unfair because they would prefer notice-and-comment rulemaking. Just, I think the fundamental response to that is there's nothing unreasonable or unfair about a State agency using a State law rulemaking tool that it's authorized to by statute. And finally, the last point I'd make is to the extent the trappers believed that the DNR's use of expedited emergency rulemaking was improper, there was a mechanism for them to challenge that rulemaking under State law. They could have brought a declaratory judgment directly into Minnesota court of appeals. The decree recognized that they may bring that kind of challenge. That's in paragraph 11. Tellingly, they did not. That's because under prevailing case law, the DNR absolutely has the authority to implement these rules through its expedited emergency rulemaking authority. I would like to pick up on one other point that my friend on the other side made, which is this idea that the district court here rubber-stamped this consent decree. That is simply not the case. This consent decree is coming up to this Court on a very robust record. Consent decrees most of the time do not even require an evidentiary hearing, as this case is, particularly the B.P. Amico case or Union Electric Co., which are two I'm thinking of, where the parties are resolving, you know, through a complaint and a prenegotiated consent decree, millions of dollars of circle liability. And the district courts in those cases are not holding evidentiary hearings. And this Court is holding that's not an abuse of discretion. Here we had a full-day evidentiary hearing. The State's leading trapping expert testified in support of the decree. The trappers had a full and fair opportunity to cross-examine him and present all of their arguments and evidence as to why they thought the decree was unfair. The district court heard testimonies from their own witness. The district court admitted 51 exhibits and evidence. This is simply not a case where the record does not support what the parties are proposing to do. Finally, my last point in my remaining time is just going to what I take it to still be the trappers' central focus, which is that the technical rule changes aren't supported by the record. As my colleague, Ms. Adkins, pointed out, to the extent that that was relevant, I don't think that's a fair reading of the record. There are at least two snaring incidents within the links management zone, one in 2014, one in 2017, that these rules would have had an impact on. I would also point out that under Local No. 93, the Supreme Court has emphatically held that in the context of a consent decree, parties can consent to relief that's far broader than anything they could have gotten at trial. So, again, that goes back to the fundamental problem with the trappers' argument here, which is that they are reviewing their – they are viewing this consent decree like a final judgment on the merits. That's not what this is. This consent decree was a compromise, and it was a reasonable one. For those reasons and the reasons in our brief, the DNR would ask the Court to affirm Judge Sostrom's decision. Thank you, Mr. Farrell. Thank you for listening. Very briefly, to sum up, this is not the trial court, so it's not the time or the proper place to argue what the facts were directly. But we set those out in our brief, and the parties here for the State and the Center argue that we're simply wrong as to that the consent decree doesn't approve any take or doesn't limit any take that would have otherwise happened before. And that is just not correct. If you just read the record, read the briefs, what they're parsing that on is that a snare is a snare, and if there's a take and a snare in the link zone, it would have been a violation. This would fix it. That is not correct, that there was not evidence in the record that those links were taken in snares that would now be improper under the law, but that it was proper at that time. And that's not the case, that nothing is fixed. To the links, they don't care. And again, with utmost respect for the judge, he is very honorable in the case, the district court judge. But the result is it's a rubber stamp, that they came in with a request for a take and approved it. Listen to us. I respect that, but that's what happened. And the state now argues that we're dramatically overstating and mentions that even in cases with million-dollar CERCLA liability at issue. But again, the point here is to redress what we feel is a wrong. We have millions and millions of dollars of CERCLA liability at stake, luckily for the clients. But it's very important to them. And we're not dramatically overstating it. Local number 93 says what it says. Summers says what it says. And we'd ask the court to follow that accordingly. And we believe the answer is that this was an improper consent decree. Thank you. Thank you, Mr. Lustico. Court thanks both counsel for participation, or all counsel, I should say, for participation in argument before the court this morning. It's been helpful, and we'll take the case under advisement.